**FANENE AIPOPO LAULU for Himself and on Behalf
of the FANENE FAMILY, Plaintiffs**

**v.**

**MOSE TAASEU and All Members of His Family,
Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 25-90

October 5, 1992

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate
Judge, MAILO, Associate Judge.

Counsel:     For Plaintiffs, Togiola T.A. Tulafono
             For Defendants, Charles V. Ala'ilima

Plaintiffs filed this action to evict defendants from certain
communal land, which is under the control, or "pule," of the senior
chief, or "sa'o," of the Fanene family; and to have removed, at
defendants' expense, the improvements which defendants had constructed
on the land. Defendants claimed a right to remain on the land under the
Samoan custom of "igagato." Pursuant to A.S.C.A. § 43.0302, a
certificate of irreconcilable dispute was issued by the Secretary of

1

Samoan Affairs on November 8, 1990, and filed with the Court on May 15, 1991. Trial was held on August 13, 1992.

## FINDINGS OF FACT

The land at issue consists of approximately two acres within the communal land of the Fanene family, known as "Malaeimi," in American Samoa. A portion of this land was adjudicated as Fanene communal land by this Court in *Aupiu v. Fanene*, Case No. 1-1931 (1932). A substantially larger portion of "Malaeimi," which included the portion adjudicated in 1932, was adjudged to be Fanene communal land by the Court in *Fanene v. Magalei*, LT Nos. 64-77 and 74-77 (1977), *aff'd sub nom. Te'o v. Fanene*, 1 A.S.R.2d 3 (1980). The two acres are located within the Fanene portion of "Malaeimi." Defendants did not participate in either of these actions in opposition to the Fanene claims.

In addition to these judicial decisions, Fanene Aipopo Laulu ("Fanene"), the present sa'o of the Fanene family,[1] and another Fanene family member testified at the trial that the two acres are Fanene communal land. Defendants countered that Tinei Su'apaia ("Tinei") and his family own or at least control the two acres and that the Fanene titleholder no longer has pule over these two acres. Defendants claimed that Fanene Tuiloli made a customary "igagato" assignment of this land to Tinei and his family, giving them the right to use the two acres so long as they render traditional service, or "tautua," to the sa'o. One Fanene family member, Lagafa'atasi Fanene, who is also defendants' nearby neighbor, testified to his recognition of the Tinei family's right to remain on this land while they continue to provide tautua to the Fanene titleholder.

---

[1] Recent Fanenes and their periods of service as the titleholder are identified in documentary evidence admitted in *Fanene v. Magalei* as follows:

| Fanene Tuiloli | 1906-1931 |
| Fanene Tuutau | 1932-1950 |
| Fanene Penerosa | 1952-1960 |
| Fanene Touli | 1961-1974 |
| Fanene A. Laulu | 19__-Present |

Fanene testified that he became the sa'o in or about 1977.

Fanene acknowledged that the custom of "igagato" exists as a special reward for extraordinary service performed for a Samoan family. The reward may be given to a person who is not related by blood to the family, but a reward of a parcel of communal land for such service is proper only with the entire family's concurrence. This concurrence is required because a reward of communal land under this custom necessarily deprives the family of use of the land so long as the rewarded person lives as a member of the family and renders tautua to the sa'o.

The status of Tinei and his family on the two acres was a major issue in *Su'a v. Pasene*, No. 4-1958 (1958), before this Court. The plaintiffs in *Su'a* were Tinei's two eldest children, who brought the suit during Tinei's extended absence in Hawaii and alleged that Tinei and his offspring were blood members of the Fanene family as the basis for a claim to the land as a sa'o's traditional assignment of communal land to a blood family member. The Court found that Tinei and his children were not blood members of the Fanene family. Tinei came to Tutuila in American Samoa from Upolu in Western Samoa, perhaps as early as 1916. At Tinei's request, Fanene Tuiloli assigned the two acres to Tinei as a plantation area for his and his family's use on the condition that Tinei would not plant any coconut or breadfruit trees. About a year later he authorized Tinei to plant such trees, provided that when Tinei permanently returned to Upolu, any coconut and breadfruit trees planted by Tinei and his family would become the property of the Fanene family.[2]

At the trial Fanene confirmed, and defendants agreed, that Tinei and his family were not blood members of the Fanene family. Fanene and defendant Faimanifo Taaseu ("Faimanifo"), who is Tinei's youngest child and the wife of defendant Mose Taaseu ("Mose"), also agreed that: (1) Tinei came to Tutuila during the administration of American Samoa by the United States Navy, (2) he was a student at the Mormon mission school in Mapusaga, which is near the two acres at issue, (3) he later became a church missionary, and (4) any traditional rights or privileges in the two acres belonging to Tinei and his family were granted by

---

[2] The Court in *Su'a* compared the permission given to "the situation of a Samoan pastor when he comes to take charge of a church." We agree with this characterization in so far as the plantation purpose and departure condition subsequent are concerned. However, since Tinei was not the pastor of a church in the village, the comparison is not exact.

3

Fanene Tuiloli. The parties, however, disagreed on the extent of those rights or privileges.

Defendants interpreted Fanene Tuiloli's grant of the two acres to Tinei and his family as an "igagato" transaction which established their right to live on the land, free of the sa'o's pule, so long as they provided tautua to the sa'o. However, this interpretation disregards the initial plantation-usage restriction in the permission given to Tinei and his family. It also overlooks the condition subsequent of termination upon permanent return to Upolu, which event may or may not coincide with their cessation of tautua to the Fanene titleholder. It further ignores the lack of any evidentiary basis showing the nature of any extraordinary service by Tinei to the Fanene family or family support as a prerequisite to a bona fide "igagato" award of communal land at the time Fanene Tuiloli gave permission to Tinei and his family to use the two acres. In contrast, Fanene viewed this transaction as Fanene Tuiloli's singular authorization of a privilege granted to persons without Fanene blood to use the land, subject to termination by their permanent departure to Upolu or at the sa'o's will.

In fact, the evidence also did not clearly show whether or not Tinei and his family were ever given express permission to reside, in addition to planting, on the two acres. However, it appears that by 1958, when *Su'a v. Pasene*, No. 4-1958 (1958), was decided, that their residency presence was not in question and had been previously established by either express or implied permission.

We find that the permission given to Tinei and his family to use the two acres included both plantation and residency purposes but, except for the conditional plantation privilege, is without any incidental traditional rights or privileges in communal land. We further find that the permission is terminable (1) by the condition subsequent of permanent departure to Upolu or, as this is at most an interest in land in the nature of a license, (2) at the sao's will, whichever occurs sooner.[3]

Considerable conflicting testimony was introduced on the extent of the tautua provided by defendants, particularly Mose and Faimanifo,

---

[3]   Since the evidence failed to show two commonly understood elements of an "igagato" award of communal land, extraordinary service and family concurrence, it is unnecessary to define this custom for purposes of precedent.

4

to Fanene. Fanene succeeded to the title in or about 1977. Mose and Faimanifo moved from Western Samoa to the two acres in 1982 and have lived there since. Plaintiffs presented testimony about several incidents during these years which they sought to portray, and defendants sought to refute, as signifying Mose's disrespect towards, if not defiance of, the sa'o and his pule. However, we are persuaded that defendants, having no blood relationship to the Fanene family and no "igagato" entitlement to the two acres, do not have any traditional interest in the land which is not terminable at the Fanene titleholder's will. Thus, it is unnecessary to make any findings of fact with respect to defendants' exercise or lack of exercise of tautua to the sa'o or to characterize the other incidents in evidence. We do point out that Fanene testified that the Fanene family is in the process of "inventorying" its communal lands and wants the Court to determine the defendants' rights or privileges, if any, in the two acres at issue; and that if any such interest is now terminable, acceptance of defendants' continued presence on Fanene communal land, should they manifest their will to provide tautua to the sa'o, depends upon the wishes of the entire Fanene family.

It is necessary to make findings of fact with respect to buildings which Tinei and his family have constructed on the two acres for purposes of their entitlement to any compensation for these improvements. Three structures have been erected and presently remain on the land. Although there is no precise evidence of the year of construction, two of them are pre-1990 hurricane "Ofa" buildings. One is a western-style house, measuring approximately 40 feet by 18 feet, which was damaged during hurricane "Ofa" and was restored with emergency-relief funds. The other is a utility building, approximately 12 feet by 8 feet in size. The third structure is a new, 60 foot by 34 foot, western-style house that was built after hurricane "Val" in 1991.

The improvements were constructed under building permits signed by one or another of the defendants and not by any Fanene titleholder. However, the recorded evidence shows that defendants have enjoyed long-term permitted use and at least tolerated occupancy of the two acres during the time of five Fanene titleholders (a period of at least 59 years and perhaps as long as 74 years), without actual or constructive knowledge of any desire on the part of any of those titleholders to vitiate Fanene Tuiloli's permission to Tinei and his family. This desire was not clearly expressed until 1990, when this action was commenced. Under these circumstances, we find that the improvements constructed by defendants on the two acres on or before June 2, 1990, when defendants received the summons and complaint in this action, were made in the

5

good-faith belief that their use and occupancy of the land was under color or claim of a legitimate interest in the land. The improvements made after June 2, 1990, were distinctly not made in such good faith.

Finally, although not addressed directly by the parties, it is reasonably inferred from the evidence that on June 2, 1990, defendants possessed growing crops and trees which they planted on the two acres pursuant to their plantation-usage privilege.

## CONCLUSIONS OF LAW

1. Defendants do not have any rights or privileges in the two acres which are not terminable at the Fanene titleholder's will. The complaint for eviction is granted. Defendants shall remove themselves from the two acres within 60 days.

2. At their option, defendants are entitled to compensation for their improvements made on the two acres before June 2, 1990, when the summons and complaint in this action were served on them, or they may remove these improvements. The measure of this compensation is the lesser amount, as of June 2, 1990, of the present value of the actual construction cost of these improvements, including additions and restorations before the cutoff date, or the present, enhanced value of the property resulting from the improvements. *See Roberts v. Sesepasara*, 8 A.S.R.2d 124 (1990); *Leapagatele v. Nyel*, 17 A.S.R.2d 201, 204-05 (1990) (citing *Roberts*). Within the next 30 days, the parties shall submit to the Court documentary evidence, consisting of affidavits, receipts, etc., of the cost of these improvements and the enhanced value of the land, or defendants shall notify the Court of their intent to remove them. The documentary evidence may prompt a further hearing on this issue.

3. Defendants are not entitled to compensation for the house constructed after June 2, 1990, or for any additions or restorations made to the two then-existing structures after that date. Defendants may also remove this house at their option.

4. Removal of the improvements will certainly destroy their beneficial use and is likely to be wholly uneconomical and wasteful. Thus, it would appear to be in both parties' best interests if plaintiffs would purchase the three buildings from defendants at a negotiated, fair price. In any event, defendants shall have 60 days in which to remove the improvements. If they are not removed, the improvements shall become the plaintiffs' property.

6

5. Defendants are entitled to harvest crops and fruits of trees that they planted on the two acres on or before June 2, 1990, and to remove this harvest from the land. Any such harvesting shall be completed within 60 days. Except for harvesting the coconuts and breadfruits, the coconut and breadfruit trees shall not be removed or otherwise disturbed, and those trees shall become the plaintiffs' property.

Judgment shall be entered accordingly. It is so ordered.